PONDER, Justice.
 

 The plaintiffs herein seek the forfeiture and cancellation of a certain oil, gas, and mineral lease.
 

 On February 12, 1935, Walter B. Andrus. tutor of the minors Beatrice and Evelyn Dudley, duly authorized by order of court, executed a lease on 57.93 arpents 0'f land, the minors’ property, to one Nor-wood Lykes. On March 11, 1935, Nor-wood Lykes assigned the lease to the Tidewater Oil Company, the defendant herein.
 

 On November 15, 1935, Walter B. Andrus, the tutor of the minors, duly authorized by order of court, leased this same property to C. C. Bishop, one of the plaintiffs herein, for the sum of $20,000 and other stipulated considerations.
 

 This suit was instituted by Walter B. Andrus, the tutor, and C. C. Bishop to cancel and forfeit the defendant’s lease. The lower court rendered judgment in favor of the plaintiffs ordering the forfeiture and cancellation of the defendant’s lease and for $1,500 attorney’s fees as damages, from which judgment the defendant prosecutes this appeal.
 

 The order of the lower court of date February 12, 1935, authorized the tutor to lease this property on a five-year commercial lease on form 12 La. under the following terms and conditions, viz.:
 

 “It is further ordered, adjudged, and decreed that the considerations for .said lease shall be as follows: For the first year the sum of Two Hundred Ninety ($290.00) Dollars, and for each succeeding year of the primary term of said lease the yearly rental shall be at the rate of One ($1.00) Dollar per arpent per year, payable in advance, said lease to begin as of date October 29th, 1934.”
 

 It- was under this order of court of February 12, 1935, that Walter B. Andrus, tutor, executed the lease to Norwood
 
 *145
 
 Lykes. The part of the lease pertinent to this decision is as follows:
 

 Section 2. “Subject to the other provisions herein contained, this lease shall be for a term of"five (5) years, beginning as of date, October 29th, 1934; (called ‘primary term’) and as long thereafter as oil, gas or other mineral is produced from said land hereunder.”'
 

 Section 4. “If operations for drilling are not commenced on said land on or before twelve (12) months from this date, this lease shall then terminate as to both parties unless on or before the expiration of said twelve (12) months Lessee shall pay or tender to Lessors or to the credit of lessors in the Calcasieu Marine National Bank at Jennings, Louisiana, (which bdnk and its successors are Lessors’ agent and shall continue as the depository for all bonus or rental payable hereunder regardless of changes in ownership of said land or the bonus or rental), the sum of One and No/100 ($1.00.) Dollar per arp.ent for the number of arpents then covered by this lease and not surrendered as hereinafter provided (herein called ‘bonus’), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. Thereafter, upon the payment of tender in like manner annually of the sum of One and No/100 ($1.00) dollar per arpent for the number of arpents then covered by this lease and not suRrendered as hereinafter provided (herein called ‘Rentals’) the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. Payment or tender of bonus or rental may be made by check or draft of Lessee mailed or delivered to Lessors or to the said bank on or before such date of payment. If such bank (or any successor bank) should fail, liquidate or be succeeded by another bank or for any reason fail or .refuse to accept bonus or rental, lessee shall not be held in default for failure to make such payments or tender of bonus or rental until thirty (30) days after lessor shall deliver to lessee' a proper recordable instrument naming another bank as agent to receive such payments or tenders. The down cash payment is consideration .'for this lease according to its terms and shall not be allocated as a mere bonus or rental for a period. Lessee may at any time execute and deliver to lessor or to the depository above named or place of record a release or releases 'covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the arpent surrendered.”
 

 No rentals were paid by the Tidewater Oil Company on or prior to October 29, 1935, and no drilling operations were commenced on the leased land. On November 16, 1935, the plaintiffs’ attorneys made demand upon the defendant for the cancellation of the lease. Upon receipt of this demand the defendant wired the sum of $58 to the Marine National Bank at Jennings, La., in payment of the rentals, which was refused on the instruction of Walter B. Andrus, tutor. The defendant again on February 12, 1936, tendered the
 
 *147
 
 payment of the rentals, which again was refused by the tutor.
 

 The plaintiffs contend that the lease should be declared forfeited and canceled, since no rentals were paid in advance of the date of October 29, 1935, under the provisions of the lease.
 

 The record shows that the tutor, Walter B. Andrus, under a proceeding had on October 29, 1934, secured an order of court to lease this same property to the said Norwood Lykes. The order of court of that date authorized the tutor to lease the property for the same consideration and under the same terms as was provided for in the order of the court of February 12, 1935. For some reason or other the lease was not executed under the previous order of court of October 29, 1934.
 

 The defendant contends that the rentals were to be paid prior to February 12, 1935,' within twelve months from the date the lease was executed. The defendant relies upon that part of section 4 of the lease which reads: “If operations for drilling are not commenced on said land on or before twelve (12) months from this date, this lease shall then, terminate as to both parties unless on or before the expiration of twelve (12) months Lessee shall pay or tender to Lessors * * * the rentals, etc.” In other words, it is the defendant’s contention that the words “from this date” contemplates the date on which the lease was executed. The language used in the order of court authorizing the tutor to lease the minors’ property is plain and unambiguous. The order of court clearly shows that the lease was to be for a primary term of five years beginning as of date October 29, 1934; that for the first year of the lease the sum of $290 was to be paid; and that for each succeeding year of the primary term the stipulated yearly rental was to be paid in advance. The order of court shows that the primary term of five years was to be divided on a yearly basis. Construing section 2 of the lease, above quoted, and section 4 of the lease, above quoted, with the order'of the court authorizing the tutor to lease the minors’ property, the words “from this date,” used in section 4 of the lease, undoubtedly has reference to the date of the beginning of. the primary term of the lease, October 29, 1934, as the date fixed by the agreement of the parties. To construe the lease otherwise would bring it in direct conflict with the order of the court authorizing the tutor to lease the minors’ property. It is not disputed that the lease gets its binding force from the order of the court, and any departure from that order inflicting the least injury upon the minors, or waiving any right they may-have, would nullify the lease. As we interpret the lease it is in harmony with the order of the court. If the defendant desired to continue the lease in effect he should have paid the yearly rental in advance of October 29, 1935, and when the defendant failed to do so the lease terminated under the express agreement of the parties.
 

 The defendant contends that the interlineations “as of date October 29, 1934,” was not in the petition or order at the time the judge signed the order. At
 
 *149
 
 the trial of the case the plaintiffs introduced certified copies of the petition and order which the defendant objected' to on the ground that the originals were the best evidence. The court permitted the plaintiffs to introduce the certified copies. When it came time for the defendant to offer his evidence, he offered the originals which showed the interlineations. In rebuttal the plaintiffs called the attorney who drew up the proceedings who testified that the interlineations were in the proceedings at the time the judge signed the order. The attorney also testified that the petition, order, and lease were turned over to the lessee, Norwood Lykes, who took them presumably to have recorded. The plaintiffs called the chief deputy clerk of court who testified that Norwood Lykes, the lessee, presented the petition and order for recordation and at that time they contained the interlineations complained of. The case was submitted to the court. Some few days afterwards the defendant moved the court to reopen the case to take the testimony of Judge Thomas F. Porter with the view of proving that the interlineations were not in the order at the time he signed it. The defendant, in its motion to reopen the case, alleged that Judge Porter was present in court at the day of the trial at his instance, but in view of the fact that the testimony as to the interlineations 'was given in rebuttal he had no opportunity to present this testimony. There is nothing in the record to show that the defendant made any request of the court on the day of the trial to permit the testimony of Judge Porter to be taken. There is nothing in the record to show that the court refused to permit the defendant to introduce this testimony. From the position taken by the defendant’s counsel, it would appear that he is of the opinion that the burden of proving that the interlineations were made prior to the signing of the order was upon the plaintiffs. It is not necessary to go into this question in view of the facts of this case, for the reason that the original lease, over which there is no dispute, contained the same provision, “beginning as of date October 29, 1934”; for the further reason that the original lessee, Norwood Lykes, presented the petition, order, and lease in their present condition to the clerk of court to be recorded. The testimony of Judge Porter could not change the decision of this case for the reason that if the interlineations were not contained in the order at the time it was signed; it certainly was in the order at the time Norwood Lykes, the lessee, had it recorded. If the interlineations were made after the order was signed, it was done so with the full knowledge and consent of the original lessee, Norwood Lykes.
 

 For the reasons assigned, the judgment is affirmed.
 

 HIGGINS, J., absent.